IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 20–cv–02128–MDB


CONTINENTAL CASUALTY COMPANY,
ACE AMERICAN INSURANCE COMPANY,
INTERSTATE FIRE & CASUALTY INSURANCE COMPANY,
ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,
CHUBB CUSTOM INSURANCE COMPANY, and
IHP COLORADO SPRINGS II (CO) OWNER, LLC,

      Plaintiffs,

v.

CINTAS CORPORATION NO. 2 d/b/a CINTAS FIRE PROTECTION, and
ARAPAHOE FIRE PROTECTION, INC.,

      Defendants.

---

## ORDER

---

This matter is before the Court on two motions. Defendant Cintas Corporation No. 2 d/b/a Cintas Fire Protection ("Cintas") has filed a Motion for Spoliation Sanctions. (["Sanctions Motion"], Doc. No. 53.) Defendant Arapahoe Fire Protection, Inc. ("Arapahoe") filed a joinder in support. (Doc. No. 55.) Plaintiffs filed a response in opposition, and Cintas filed a reply. (["Sanctions Response"], Doc. No. 56; ["Sanctions Reply"], Doc. No. 60.) Cintas has also filed a Motion for Summary Judgment. (["SJ Motion"], Doc. No. 52.) Plaintiffs filed a response in opposition, and Cintas filed a reply. (["SJ Response"], Doc. No. 58; ["SJ Reply"], Doc. No. 61.)

The Court heard oral argument on these motions (hereinafter referred to as "Motions") on October 3, 2022. (Doc. No. 77.) For the reasons described herein, both Motions are **DENIED.**

## BACKGROUND

Plaintiff IHP Colorado Springs II (Co) Owner, LLC ("IHP") was the owner of the Hilton Garden Inn, located at Briargate Parkway in Colorado Springs, Colorado ("Subject Property"). (Doc. No. 26 at ¶ 13.) The remaining named Plaintiffs are insurance companies that provided insurance to Colony Capital, Inc. ("Colony"), and its affiliated parent and subsidiary companies, for the benefit of IHP. (*Id.* at ¶¶ 11-12, 14.)

Plaintiffs allege that "[o]n December 30, 2018, a coupling on the dry pipe system in the Subject Property's attic fractured and flooded the areas below, causing extensive property damage and a loss of business income by IHP." (*Id.* at ¶ 31.) They allege that Cintas installed, inspected, and serviced the dry pipe system that broke. (*Id.* at ¶¶ 22-24.) They also allege that "beginning in January 2018, Defendant Arapahoe began providing inspections, testing and maintenance on the dry pipe fire suppression system." (*Id.* at ¶ 27.)

According to Plaintiffs, "Defendant Cintas had a duty pursuant to National Fire Protection Association ("NFPA") Section 13 to install the piping with the proper pitch and slope so that any condensation or water within the system could be drained and not become trapped within the piping." (*Id.* at ¶ 25.) However, Cintas allegedly installed the system improperly "such that it was not adequately sloped and pitched, allowing water to become trapped within the system, and Defendant Arapahoe failed to verify the system was adequately sloped prior to filling the system with water." (*Id.* at ¶ 32.) According to Plaintiffs, the improper slope of the dry sprinkler pipes caused water to remain in the pipes and freeze. (*Id.*)

2

IHP filed a claim with the insurance company Plaintiffs, receiving coverage for the loss but incurring a deductible of $100,000. (*Id.* at ¶ 33.) In this lawsuit, IHP seeks to recover damages resulting from the incident, and the insurer Plaintiffs have stepped into the shoes of IHP and seek to recover in subrogation for the money they paid to IHP. (*Id.* at ¶ 33-34.) Plaintiffs have filed negligence and negligence per se claims against Cintas, as well as a negligence claim against Arapahoe. (*Id.* at ¶¶ 36-45.)

## I.   *Cintas's Sanctions Motion*

In its Sanctions Motion, Cintas argues that it has been prejudiced because it "was not allowed to inspect the sprinkler system before any repairs were made, because no photographs were taken or other records made showing the condition of the sprinkler system at the time of the incident, and because the system had clearly been modified since Cintas last worked on the system" in 2015. (Doc. No. 53 at 2.) Cintas explains that even though the incident occurred in December 2018, Cintas was not able to inspect the property and conduct testing until November 19, 2019. (*Id.* at 4-6.) Cintas also claims that for some of the damaged hotel rooms, there are no photographs to illustrate the alleged damage or to allow Cintas to determine what repairs were needed or whether the repairs that were done were reasonable. (*Id.* at 12.)

In its Sanctions Response, Plaintiffs first argue that there is no spoliation because no portion of the Dry Pipe System, other than the coupling, was altered. (Doc. No. 56 at 8.) Additionally, the coupling itself was retained for examination. (*Id.*) Plaintiffs also argue that Cintas has not demonstrated it suffered actual prejudice because every expert is in the same position as Cintas's experts with respect to the evidence. Specifically, Plaintiffs argue:

> [E]very retained expert has had an opportunity to inspect the Dry Pipe System in
> the same condition. IHP and the third-party contractors have testified under oath

> that since the Incident, only the coupling was replaced on the Dry Pipe System; no other repairs were made. Every expert also had an opportunity to examine the retained fractured coupling.

(*Id.* at 10.) Plaintiffs also deny culpability for the delayed notice to Cintas because they initially believed the Dry Pipe System was original to the building, and it was only after they retained documents from the Colorado Springs Fire Department that IHP realized Cintas might be responsible for the damage.[1] (*Id.* at 2, 5.) As to the damage to the hotel rooms, Plaintiffs argue that they have provided "testimony, photographs, estimates, invoices, and other business records in support of their claim for damages." (*Id.* at 11.) Additionally, Plaintiffs argue that Cintas had an opportunity to depose the individuals involved with the adjustment of the claim, and that to the extent there is a lack of photos for some rooms it is because those rooms "only required cleaning." (*Id.*) Plaintiffs also note that "[w]hether the documentation provided in support of Plaintiffs' damage claims is sufficient remains a question for the finder of fact and is not the proper subject of a motion for spoliation sanctions." (*Id.* at 12.)

In its Sanctions Reply, and during oral argument, Cintas stressed that they do not have the necessary data "to try to disprove Plaintiffs' unsubstantiated theory that the pitch of the dry sprinkler system in November 2019 is the same as it was in March 2015 when Cintas installed the system and the same as it was at the time of this incident on December 20, 2018." (Doc. No. 60 at 2.) According to Cintas, "Plaintiffs should not be allowed to benefit from their intentional and reckless spoliation of the key evidence." (*Id.*) Cintas requests dismissal as a sanction, or in the alternative, "that no liability experts may offer any opinions about the condition of the

---

[1] Plaintiffs submitted a supplemental affidavit stating that they requested documents from the Colorado Springs Fire Department on June 18, 2019. (Doc. No. 76.)

sprinkler system before Cintas was allowed to inspect it in November of 2019, and that Plaintiffs

be prohibited from seeking damages for which they failed to provide sufficient substantiation."

(*Id.* at 9.) During oral argument, Cintas also offered as a possible alternative the sanction of

prohibiting experts from referring to, or relying on, the November 2019 pitch test. (Doc. No. 77.)

## II.  *Cintas's Summary Judgment Motion*

In its SJ Motion, Cintas argues that it is entitled to summary judgment because there is a

binding and enforceable contract with terms and conditions that bar the insurance company

Plaintiffs from asserting subrogation claims against Cintas, and that bar IHP from recovering

incidental, consequential, and business interruption damages. (*See generally* Doc. No. 52.)

Plaintiffs argue there is a factual dispute as to whether IHP agreed to Cintas' proposed

terms and conditions. (*See generally* Doc. No. 58.) They argue Cintas sent more than one

proposal and only the first proposal included the terms and conditions at issue. (*Id.* at 8-9.) They

also argue that IHP, through Chatham Lodging Trust ("CLT"), rejected Cintas's terms when

CLT responded with its own terms and conditions. (*Id.* at 9.) Additionally, Plaintiffs argue that

even if the terms and conditions were part of the agreement, they would be unenforceable under

Colorado law because: (1) certain terms would be void as contrary to public policy; (2) the terms

were unfairly entered into because Cintas made a "take it or leave it" demand at a time when IHP

was in desperate for repairs; and (3) the terms did not clearly, legibly, and unambiguously

communicate an intent to extinguish liability. (*Id.* at 11-17.)

## LEGAL STANDARD

### I.  *Legal Standard on Cintas's Sanctions Motion*

On a motion for sanctions, courts can consider: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that a dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Archibeque v. Atchison*, *Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995). These factors are not a "rigid test;" rather, "determining the correct sanction is a fact specific inquiry that the district court is in the best position to make." *Id.* Spoliation occurs when a party either destroys evidence or it fails to preserve it for use in foreseeable litigation. *Blangsted v. Snowmass-Wildcat Fire Prot. Dist.*, 642 F.Supp.2d 1250, 1259-60 (D. Colo. 2009). The burden is on the moving party to establish "a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996) (citation, alteration, and internal quotation marks omitted).

### II.  *Legal Standard on Cintas's Summary Judgment Motion*

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.

1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

### I. The Sanctions Motion

As a threshold matter, the Court notes that IHP and Plaintiffs should have put Cintas on notice sooner than August 2019. First, IHP had worked with Cintas just three years earlier and

should have known that they were involved in installing the dry pipe system even before

Plaintiffs received the Colorado Springs Fire Department records. Second, the Fire Department

records were produced in July 2019, but Plaintiffs did not put Cintas on notice until August

2019. Thus, Plaintiffs bear at least some responsibility here, but the Court is not convinced that it

rises to the level of culpability. There is no indication that IHP's delayed notice to Cintas was in

bad faith, or that the delay was inexcusable. Additionally, the Court agrees with Plaintiffs that

there has been no destruction of evidence—and certainly no intentional destruction of evidence

that justifies an adverse inference. Thus, the Court finds that Cintas has not carried its burden on

culpability, and that factor weighs in favor Plaintiffs.[2]

### The Degree of Actual Prejudice

There is no question that, unlike Arapahoe and Plaintiffs' experts, Cintas's experts were

not present during the first inspection in April 2019. Additionally, Cintas was not able to perform

pitch tests between the date of the incident in December 2018, and the date of Cintas's first

inspection in November 2019. During oral argument Cintas explained that a key issue in this

case is the pitch of the system. (Doc. No. 77.) Specifically, "the pitch of the pipe was not

properly sloped in the area of the incident and there was no auxiliary drain in the third-floor

stairwell." (Doc. No. 53 at 10.) According to Cintas, Plaintiffs will argue that improper pitch

caused the system to retain water, freeze, and burst, and they will argue that the "condition and

layout of the dry sprinkler system today is unchanged from when Cintas performed the work in

---

[2] Similarly, the Court finds that the factors concerning interference with judicial process, and prior warnings, also weigh in favor of Plaintiffs. Plaintiffs were diligent in their efforts to investigate the incident and placed Cintas on notice soon after they learned—or better said, were reminded—that Cintas was the installer. There is no indication that they intentionally interfered with the judicial process or that they ignored prior warnings.

early 2015." (*Id.*) Cintas contends that it is "significantly prejudiced in defending itself," because it cannot prove that the system was modified sometime between 2015 and November 2019. (*Id.* at 11.) On that point, the Court disagrees. Despite Cintas's claim that it "cannot prove the system was modified because the evidence was destroyed," Cintas's own expert has identified "signs of modifications," and Cintas states that these examples "*show* that the dry sprinkler system *was modified after Cintas performed work* at the hotel." (*Id.* at 10-11 (emphasis added).) In other words, Cintas may not have data from a pitch test, but its expert has several ways of deducing from the existing evidence that modifications were made after 2015.

Additionally, by Cintas's own admission, Cintas seeks to "to *disprove* Plaintiffs' unsubstantiated theory that the pitch of the dry sprinkler system in November 2019 is the same as it was in March 2015 when Cintas installed the system and the same as it was at the time of this incident on December 20, 2018." (Doc. No. 60 at 2 (emphasis added).) But Cintas does not carry the burden of proof. Instead, Cintas can hold Plaintiffs to their burden of proving that Cintas improperly installed the dry pipe system, and if Cintas is correct that Plaintiffs' theory about the pitch is "unsubstantiated," then Plaintiffs' claims will be significantly weakened or altogether fail.

Moreover, just like Cintas, Plaintiffs cannot point to any pitch tests conducted between February 2015 and November 2019, meaning Cintas has access to the same information—and lack of information—as Plaintiffs. Additionally, every expert—including Cintas's expert—has access to a key piece of evidence in this case: the fractured coupling. All experts were free to inspect and test that part as necessary and draw conclusions as they see fit.

Thus, the degree of actual prejudice to Cintas is relatively small. Even without a pitch test or earlier access to the site, Cintas's own witnesses can testify that Cintas did not make any modifications, and that Cintas installed the system properly. Indeed, during oral argument Cintas's counsel referred to Cintas's 2015 pitch test multiple times, noting it was successful and indicates Cintas did indeed install the system properly. (Doc. No. 77.)

The prejudice to Cintas with respect to the damaged hotel rooms is also either minimal or non-existent. Cintas's experts have access to the same information, photographs, invoices, and documents that every other expert has in this case. *See Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, Civ. A. No. 08–cv–02792–MSK–KMT, 2010 WL 3023822, at *1, 4 (D. Colo. July 30, 2010) (denying spoliation sanctions where the same evidence was available to all parties).

The Court also considers the last prong—the "efficacy" of sanctions. Cintas proposes dismissal, or in the alternative, that no liability experts testify about the condition of the sprinkler system before Cintas was allowed to inspect it, or that experts refrain from referring to or relying on, the November 2019 pitch test. Certainly dismissal is too severe under the circumstances, but even a limitation on expert opinions would effectuate severe prejudice on Plaintiffs. Cintas admitted during oral argument that the pitch of the system is at the heart of this case. (Doc. No. 77.) If Plaintiffs are precluded from offering expert testimony on the pitch, most of their case is compromised. In other words, because a case involving engineering concepts and fire system codes is necessarily expert-heavy, a limitation on expert testimony (particularly heart-of-the-case expert testimony) would be the near-equivalent of dismissal. *See Eastman Kodak Co. v. Kyocera Corp.*, No. 10–CV–6334CJS, 2012 WL 4103811, at *7 (W.D.N.Y. Sep. 17, 2012) (noting that disqualification of an expert witness flows from the court's inherent power "to preserve the

integrity of the adversary process," and that disqualification "is a drastic remedy . . . and should be resorted to rarely"); *see also Gates Rubber Co.*, 167 F.R.D. at 101 (D. Colo. 1996) (*citing Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir. 1992)) (noting the importance of the court's predisposition to resolving matters on the merits). Additionally, Cintas's proposed sanctions would not give Cintas what it really wants in this case—post-2015 and pre-November 2019 pitch information. Thus, even if the Court found Plaintiffs culpable, and even if the Court identified meaningful prejudice in this case, it would be difficult to fashion a sanction that would not unduly prejudice Plaintiffs, and that would actually address Cintas's concerns. For these reasons, the Court will not grant Cintas's Sanction Motion.[3]

## II.  *The Summary Judgment Motion*

Cintas "requests that the Court enter Summary Judgment in its favor… dismissing the claims against Cintas as a matter of law as barred, waived, and/or limited in accordance with the terms of the parties' contract." (Doc. No. 52 at 7.) The Court will first consider the applicable law, and then analyze whether Cintas is entitled to summary judgment.

### A.  *Choice of Law*

Cintas argues (and Plaintiffs do not dispute) that "Colorado law applies to the contract formation question," and to the question of whether the limitation of liability and waiver of subrogation claims in the contract are enforceable terms.[4] (Doc. No. 52 at 8-9.) Thus, the Court

---

[3] The Court also finds that the only factor that would be weighed differently for Arapahoe is the degree of prejudice. Here, Arapahoe could not have been more prejudiced than Cintas because Arapahoe was placed on notice months before Cintas. (Doc. No. 53 at ¶¶ 10, 14.) Thus, to the extent any portion of the analysis is different for Arapahoe, it weighs in Plaintiffs' favor.

[4] In its SJ Motion, Cintas seemed to maintain that Ohio law governs the contract at issue, and it "reserve[d] the right to challenge the choice of law of the Contract in later proceedings if this Court

need not conduct a fulsome choice of law analysis at this time because both parties have

consented to the application of Colorado law for the purpose of the SJ Motion and each of the

issues raised therein.[5] *See Copic Ins. Co. v. Wells Fargo Bank, N.A.*, 767 F.Supp.2d 1191, 1205

(D. Colo. 2011) (applying Minnesota law, noting, among other things, the parties' apparent

consent).

### B. Contract Formation

At the heart of this dispute is whether Cintas and IHP entered into a contract governed by

Cintas's standard terms and conditions. Whether the parties entered into a contract is a question

of fact. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986). However,

if "there is no genuine dispute as to any material fact" concerning contract formation, then Cintas

is entitled to judgment as a matter of law on the question of contract formation. In conducting its

inquiry, the Court first considers whether the facts currently in dispute are material because they

are "essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670. If they are essential

to the claim's disposition, then the Court considers whether any of the disputes over material

facts are genuine because "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson*, 477 U.S. at 248.

---

denies Cintas's Motion for Summary Judgment." (Doc. No. 52 at 9-10 n.3.) It is unclear how Cintas purports to have Colorado law apply to its interpretation of the validity of the terms, now, but would seek to have a different law apply to the same analysis later. In any event, during oral argument counsel for Cintas conceded that Colorado law governs. (Doc. No. 77.)

[5] Additionally, in a case with similar issues and an identical set of terms and conditions, the Honorable R. Brooke Jackson held that Colorado law applied to both contract formation and validity of terms. *Cont'l Ins. Co. v. Cintas Corp. No. 2*, Civ. A. No. 18-CV-00254-RBJ, 2019 WL 4643711, at *2, 5 (D. Colo. July 12, 2019) (citing *Carlson v. Boryla*, 490 P.2d 700, 702 (Colo. App. 1971)).

Here, Cintas claims it submitted an "offer" to IHP when it submitted its first proposal. Specifically, Cintas states that "[b]efore completing [the] work [at issue], Cintas provided the hotel owners with a proposal for the work, dated December 8, 2014, which included the proposed scope of work and Cintas's Terms and Conditions (hereinafter referred to as the 'Offer')." (Doc. No. 52 at 3.) Cintas contends that the "offer letter for the work at issue was sent by Cintas to Kurt James, the VP of engineering of IHP's parent company." (*Id.* at 5.) Mr. James purportedly had authority to enter into contracts, and he obtained specific approval for the contract at issue here. (*Id.*) Subsequently, Cintas performed and was paid for the work, which according to Cintas, constitutes an "acceptance." (*Id.* at 5, 9 ("[T]here is no dispute that there was an offer, acceptance, and consideration, thus forming a contract between the hotel owner and Cintas which includes the terms and conditions at issue in this [M]otion.").)

However, contrary to Cintas's statement that "there is no dispute that there was an offer [and] acceptance," Plaintiffs argue there is a dispute as to both. Plaintiffs concede they received the original proposal that included Cintas's terms and conditions, but they dispute that the proposal was an "offer." (Doc. No. 58 at ¶ 3.) In support of their position that this proposal was not an offer, Plaintiffs offer evidence that the first proposal was nullified by a second proposal that Cintas sent just days after the first proposal. (Doc. No. 58-1 at ¶ 10.) Plaintiffs also argue, and there is evidence to support, that the second proposal did not include Cintas's terms and conditions. (Doc. No. 58 at ¶ 3; Doc. No. 58-1 at ¶ 11.) Additionally, Plaintiffs contend that Cintas's second proposal contained a list of exclusions, one of which was a liquidated damages exclusion. (Doc. No. 58 at ¶ 12.) Plaintiffs also note that CLT never signed the first or second

proposal, and they offer evidence that CLT rejected Cintas's terms and conditions when CLT submitted its own terms and conditions. (*Id.* at 2, 6, 9; Doc. No. 58-1.)

Cintas asks this Court to disregard Plaintiffs' purported evidence (CLT's purchase order and CLT's terms and conditions). (Doc. No. 61 at 4.) Cintas argues that there is no evidence that the purchase order was actually sent to Cintas, and that Plaintiffs have not produced any evidence that the purchase order actually included terms and conditions. (*Id.*) However, Plaintiffs' purported evidence is attached to the Affidavit of John Moran, the Regional Corporate Engineering Project Manager for CLT. (Doc. No. 58-1.)

In his affidavit, Mr. Moran purports to have reviewed records kept in the ordinary course of CLT's business and determined that a purchase order was indeed "issued," and that all purchase orders contain CLT's standard terms. (*Id.* at ¶¶ 15-16.) To the extent Cintas is arguing that a jury would not believe Mr. Moran or another witness who testifies that CLT sent its own terms, that is a matter of credibility, which the Court does not consider on a motion for summary judgment. *See Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002) (noting that credibility determinations and weighing of the evidence are both jury functions, and not those of a judge ruling on summary judgment). Additionally, to the extent Cintas can offer its own witness or other evidence to demonstrate it never received CLT's terms and conditions, that would require the weighing of evidence. *See id.*

In addition to Mr. Moran's affidavit on these issues, there is at least one communication that indicates CLT was going to "review" the first proposal. (Doc. No. 58-1 at ¶ 9.) This suggests CLT was considering the terms before agreeing to them, and it is possible that after considering

those terms, CLT rejected them by holding back a signature, or sending competing[6] terms.[7] Mr.

Moran's affidavit also indicates that CLT accepted Cintas's quote—meaning it accepted the

price for the work—but he does not state that CLT accepted the terms at issue. (*Id.* at ¶ 12.) Mr.

Moran also states that Cintas did not commence work on the dry pipe sprinkler system until

February 2015, which means there was a one-to-two-month period within which the parties may

have further clarified their intent with respect to the terms and conditions. (*Id.* at ¶ 18.)

Additionally, Plaintiffs reference a third proposal purportedly sent to IHP *after* Cintas began the

work.[8] (Doc. No. 58 at 6-7, 9.) Plaintiffs argue that this third proposal is another indication that

Cintas knew IHP had not assented to Cintas' terms and conditions. (*Id.* at 9.)

On this SJ Motion, the Court is not tasked with weighing evidence or making credibility

determinations. Instead, it is tasked with determining whether the facts purportedly in dispute

(specifically, whether the initial offer was truly an offer, whether CLT sent its own terms and

conditions constituting a rejection of any purported offer, and whether later exchanges indicated

disagreement over terms) are material facts concerning contract formation that are genuinely in

dispute. *Tolan*, 572 U.S. at 656. On this record, a reasonable juror could find either that CLT

---

[6] Cintas argues that CLT's terms and conditions do not conflict with Cintas' terms and conditions, but the Court disagrees. Cintas' terms and conditions included a meaningful limitation of liability—hence the present dispute. CLT's terms, on the other hand, include a broad indemnification clause purporting to hold Cintas responsible for any damages or costs of any nature arising out of, or related to, Cintas' work. (Doc. No. 61 at 8.)

[7] Although there appears to be a dispute as to whether CLT's own terms were actually sent to Cintas, a factual dispute on this issue only further supports that material facts continue to be genuinely disputed.

[8] There appears to be a dispute as to whether the third proposal was actually sent to Plaintiffs. (Doc. No. 58 at 7.) A factual dispute on this issue further confirms that summary judgment cannot be entered on this record.

rejected Cintas' terms, or that the parties never reached agreement on certain terms. Thus, the Court cannot find as a matter of law that a contract containing Cintas's proposed terms and conditions was formed between Cintas and IHP.

### C. *Validity of the Terms*

Cintas relies on its limited liability provision to argue it is entitled to summary judgment. (Doc. No. 52 at 9-13.) Plaintiffs argue that even if a contract was formed, and even if the terms and conditions were part of the agreement, the limited liability provision is essentially an exculpatory clause that would be unenforceable under Colorado law, and specifically, *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). (Doc. No. 58 at 11-17.) Cintas replies that the "exact same terms at issue here" were already examined by another court under the *Jones* factors and determined to be "valid and enforceable under Colorado law." (Doc. No. 61 at 8-9 (citing *Cont'l Ins. Co. v. Cintas Corp. No. 2*, Civ. A. No. 18-CV-00254-RBJ, 2019 WL 4643711 (D. Colo. July 12, 2019) [hereinafter "*Continental I*"]).)

In *Continental I*, the Honorable R. Brooke Jackson considered the same limited liability provision at issue here and applied the *Jones* factors to analyze whether the "exculpatory agreement" was valid and binding.  2019 WL 4643711, at *6 ("Though the determination of the validity of an exculpatory agreement is a question of law for the court to determine, the issue of whether an exculpatory clause is binding due to circumstances surrounding its execution is a factual issue."). Relying heavily on *Continental I,* Cintas seems to concede that the limited liability provision should be analyzed as an exculpatory clause under the *Jones* framework. (Doc. No. 52 at 9-12 (analyzing the provision under the *Jones* factors); Doc. No. 61 at 9 (arguing that this case cannot be distinguished from *Continental I*).)

If the *Jones* framework was to apply, one *Jones* factor could be dispositive. *See, e.g.*, *Raup v. Vail Summit Resorts, Inc.*, 734 F.App'x 543 (10th Cir. 2018); *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243 (10th Cir. 2018); *Strum v. Weber*, Civ. A. No. 21-cv-0684-WJM-GPG, 2022 WL 2176287 (D. Colo. June 16, 2022). Here, the first factor—"the existence of a duty to the public"— would likely be determinative. *Jones*, 623 P.2d at 376. This case concerns a fire suppression system installed for public safety. "[A] public duty is implicated when, among other things, the party seeking the benefit of an exculpatory clause is in an industry that is 'suitable for public regulation,' performs a service of great importance or a service that is a practical necessity to members of the public, possesses a decisive advantage in bargaining strength, or maintains control over the person or property likely to be harmed by the carelessness of its agents." *Pernick v. Computershare Tr. Co.*, 136 F.Supp.3d 1247, 1260 (D. Colo. 2015) (citing *Jones*, 623 P.2d at 376-77). This is not a case where the service at issue is not a practical necessity to members of the public. *See, e.g.*, *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1153 (10th Cir. 2016) ("[W]hile businesses providing, say, water, electricity, or sanitary services usually may not shield themselves from claims of negligence, recreational service providers often can."); *Pernick*, 136 F.Supp.3d at 1260 ("Although the securities industry may, in a general sense, be heavily regulated, the specific service that Computershare provides is not a practical necessity to members of the public[.]"); *see also Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004) ("[W]e have previously distinguished businesses engaged in recreational activities, which are not practically necessary and with regard to which the provider owes no special duty to the public."). Nor is this a case where members of the public have "availability of choice in the market for a particular service." *See Allison v. Bank-One Denver*,

289 F.3d 1223, 1241 (10th Cir. 2002) ("We conclude that such availability of [IRA] services . . .
contradicts . . . Plaintiffs' assertion that Bank One provided a duty to the public[.]");
*Mandelbaum v. Fiserv, Inc.*, 787 F.Supp.2d 1226, 1241-42 (D. Colo. 2011) ("Although the at-
issue [IRA] services may be of great importance to the public, the availability of choice in the
market with respect to the person or entity to perform such service supports a finding that the
exculpatory provisions should not be rendered void as against public policy."). In other words,
members of the public are subjected to whatever fire suppression system is installed, and the
system impacts their safety. Therefore, Cintas has a duty to the public to maintain the system in
accordance with applicable regulations and standards.[9]

However, the parties have not offered—and the Court has not found—a single case where
an entire limited liability provision governing the relationship between two sophisticated
commercial parties has been invalidated on the first *Jones* factor. The Court questions whether
the *Jones* framework applies at all. Exculpatory clauses concern negligence claims. Plaintiffs did
indeed bring negligence claims, contending no contract was formed in the first place. But the
application of this purported exculpatory clause turns in part on whether a contract was formed,
and if a contract was formed, then Plaintiffs' claims would be contractual, at least in part. Courts
have recognized that exculpatory clauses are different from other types of contractual limitations
on liability. *See, e.g.*, *Johnson Nathan Strohe, P.C. v. MEP Eng'g, Inc.*, 501 P.3d 826, 831 (Colo.
App. 2021) ("While contractual limitations of liability and exculpatory agreements both limit a

[9] In its SJ Motion, Cintas "acknowledges that it performs services 'generally thought suitable for public regulation' as its services are generally governed by standards set forth by the National Fire Protection Association (NFPA)." (Doc. No. 52 at 11.)

party's liability, they are different in kind."); *U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.,* 192 P.3d 543, 548 (Colo. App. 2008) (recognizing different types of limitations on liability). This means different standards might apply depending on whether the provision is analyzed as a contractual limitation on liability or an exculpatory clause. *See Johnson Nathan Strohe, P.C.*, 501 P.3d at 831 (finding that exculpatory clauses are generally disfavored while limitations of liability are generally enforced).

That the *Jones* framework is potentially a misfit is further evidenced by the cases the parties cite in support of their respective *Jones* positions. Those cases concern negligence claims in the context of direct-to-consumer services, many related to recreational sports, such as skiing. The consumer in those cases is typically a member of the public. This case, by contrast, concerns a sophisticated business entity consuming commercial services. And "[s]trong policy considerations favoring freedom of contract generally permit business owners to allocate risk amongst themselves as they see fit." *Constable v. Northglenn, LLC*, 248 P.3d 714, 718 (Colo. 2011). In fact, "Colorado case law is rife with examples upholding the validity of contractual limitations of many kinds between sophisticated commercial entities." *Johnson Nathan Strohe, P.C.*, 501 P.3d at 832.

In any event, the Court does not need to determine whether the *Jones* factors apply because, like the court found in *Continental I*, this Court finds that the validity of the provision at issue (whether an exculpatory clause, a limited liability provision, or something else) turns on factual questions surrounding contract formation. *See Continental I,* 2019 WL 4643711, at *7-8. Because there are genuine disputes as to several material facts, Cintas is not entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

    (1) "Defendant's Cintas Corporation No. 2 d/b/a Cintas Fire Protection's Motion for Spoliation Sanctions" (Doc. No. 53) is **DENIED**.

    (2) "Defendant's Cintas Corporation No. 2 d/b/a Cintas Fire Protection's Motion for Summary Judgment" (Doc. No. 52) is **DENIED**.

DATED: November 28, 2022.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge